ROCK RIVER SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* JAMES S. KELLY *et al.*, Defendants-Appellants.

Third District   No. 77-429

Opinion filed April 10, 1978.

Donald E. Blodgett, of Blodgett & Reese, of Rock Falls, for appellants.

David E. Mayfield, of Guyer, Enichen & Mayfield, of Rockford, and Ward, Ward, Castendyck, Murray & Pace, of Sterling, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
The individual defendants in this cause appeal from a judgment of the Circuit Court of Whiteside County involving a confession of judgment on a note and foreclosure of a mortgage securing the note. Plaintiff Rock River Savings and Loan Association (hereinafter called "Rock River"), brought two actions in the circuit court, both to confess judgment on the note and to foreclose the mortgage securing the note. The actions were consolidated for hearing and the trial court thereupon entered judgment upon the note and a decree of foreclosure and sale. Defendants contend on appeal that the underlying loan, secured by the note and mortgage, was usurious.

It appears from the record that during 1972, a motel designated as a Holiday Inn Motel was under construction on certain real estate located in Sterling, Illinois, and owned by Sterling Motel Inc. (hereinafter called "Sterling Motel"). At that time the shareholders of Sterling Motel were the individual defendants in this case, James S. Kelly and Helen N. Kelly (husband and wife), Dan Siegel and Rose Siegel (husband and wife), and Theodore Kristal and Ruth Kristal (husband and wife). The motel was apparently being built with interim financing. As construction neared substantial completion, the parties sought to secure permanent financing. For this purpose, defendant Theodore Kristal procured the services of Jesse Green, a mortgage broker, and in February of 1972, Green obtained

a loan commitment from plaintiff Rock River. Among the conditions of plaintiff's loan commitment was the requirement that the shareholders of Sterling Motel (that is, the individual defendants in this cause) would execute the note individually and severally as principals.

On August 4, 1972, the loan was consummated in the principal sum of $662,400. On that date, Sterling Motel, the corporation and the individual defendants executed (as principals) a note in the amount of the loan. The note specified an annual interest rate of 8½%. On that same date, as part of the transaction, the Sterling Motel executed a mortgage of the motel property and real estate for security of the note. The loan proceeds were disbursed by the escrow agent to pay off an existing mortgage on the motel property and other expenses in connection with the loan.

It also is noted from the record that on January 31, 1973, defendant Sterling Motel (a corporation) executed and delivered three quitclaim deeds, each conveying an undivided one-third interest in the motel property, so that the entire interest was conveyed thereby, as directed by the shareholders. The Sterling Motel quitclaimed an undivided one-third interest in the property to defendants James S. Kelly and Helen N. Kelly as joint tenants, a further undivided one-third interest in the property to defendant Rose Siegel, and a final undivided one-third interest in the property to defendant Ruth Kristal. Thereafter, on April 27, 1973, the defendant shareholders caused the Sterling Motel corporation to be dissolved. Testimony from the individual defendants at the hearing in the trial court, indicated that the dissolution of defendant Sterling Motel corporation and the distribution of its property was undertaken to permit defendant-shareholders to take personal advantage of tax losses which would otherwise remain in Sterling Motel (the corporation).

It appears also from the record that the monthly loan mortgage payments in the amount of $5,646 per month were made to plaintiff Rock River from the time the loan was consummated until September 3, 1975. Thereafter, no monthly loan payments were made to plaintiff, and plaintiff filed suit to foreclose the mortgage on the motel property. A separate proceeding for confession of judgment on the note was also filed and the judgment by confession on the note was opened up, and the actions for judgment on the note and for foreclosure of the mortgage were consolidated for trial and disposition. Following a hearing in the trial court, that court found in favor of the plaintiff and entered judgment on the note, and as against the defendants, in the amount of $831,283.76 and entered a decree of foreclosure and sale of the premises based on the same judgment amount. The trial court also denied the counterclaims which had been filed by the individual defendants seeking to assert a defense of usury.

■■■ On appeal in this court, the individual defendants do not contest

their obligations and liabilities under the note and mortgage, but simply argue that the judgments obtained by plaintiff on the note and mortgage should have been offset by the individual defendants' personal partial defense of usury. At the time the note in the instant case was executed, section 4 of the Illinois Interest Act (Ill. Rev. Stat. 1975, ch. 74, par. 4) provided for a maximum lawful interest rate of 8%. The note in this case actually specified an interest rate of 8½% per annum. The Interest Act, however, does provide for exceptions to the general limitation on interest rates. Section 4 of the Interest Act provides in part:

> "It is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to the following transactions:
>
> (a) Any loan made to a corporation;
> * * *
>
> (c) Any business loan to a business association or copartnership * * * The term 'business' shall be deemed to mean a commercial or industrial enterprise which is carried on for the purpose of investment or profit * * *."

With respect to these exceptions to the general limitation of interest rates specified by the Interest Act, the Illinois Supreme Court stated in *People v. Gallo* (1973), 54 Ill. 2d 343, 351, 297 N.E.2d 569:

> "The line here is drawn between loans to those who are engaged in business and loans to those who are not."

As also stated in *Chicago Title & Trust Co. v. Jensen* (1st Dist. 1933), 271 Ill. App. 419, 422:

> "The question whether a loan is usurious is a question of fact, and in determining that question equity will look to the substance of the transaction and disregard the form, and will not permit parties to evade the statute by any scheme or expedient."

In the instant case, the individual defendants contend that they had no direct personal ownership or control over the operations of the Holiday Inn, which became a tenant on the premises, and that they, therefore, had no personal business interest in obtaining the loan. Defendant James Kelly testified in the trial court, however, that: "We [the individual defendants] were landlords." Defendant Theodore Kristal testified to his general activities in the development of real estate, and stated that he invested in Sterling Motel in order "to make money." It is, therefore, apparent that the improvement of the property owned by Sterling Motel was undertaken in anticipation of future financial gain by the corporation, and that such financial gain would inure to the benefit of the shareholders of Sterling Motel. It is also noted that the failure to obtain permanent financing for the improvements to the Sterling Motel property would have a detrimental impact upon the financial stability of Sterling Motel,

and a consequential adverse impact on the value of the shares of Sterling Motel, which were held by the individual defendants. Therefore, while the proceeds of the loan may have been directed to be paid to the corporation by the individual defendants, as shareholders of such corporation, the individual defendants, in obtaining the loan, were acting collectively as a business association or joint venture in promotion of the project and their investments in the shares of Sterling Motel. On the basis of the record, therefore, we conclude that the trial court properly determined that the loan which was made through the actions of the individual defendants, came within the business exception of section 4(1)(c) of the Interest Act.

Defendants have cited *Metcoff v. Mutual Trust Life Insurance Co.* (1st Dist. 1975), 33 Ill. App. 3d 1059, 339 N.E.2d 440, in support of their argument that the loan in the instant case was not made for business purposes of defendants. We note, however, that in *Metcoff*, the two sons who were engaged in a business purpose, and who desired to obtain a loan to develop a real estate investment, were unable to obtain financing in their individual capacities. The prospective lender suggested that the sons enlist the financial support of their parents, and a loan was eventually consummated with the parents and the sons signing as principals. The *Metcoff* court adopted the view that the loan was made to the parents, who had no business interest, and that the loan proceeds were then transferred to the sons for the purpose of the sons' business purposes. The *Metcoff* court there concluded that the parents could interpose the defense of usury (not including the sons) for the reason that no business purpose of the parents was served by the loan. *Metcoff*, therefore, is readily distinguishable from the instant case. While the loan proceeds may have served business purposes of Sterling Motel, which was wholly owned by the shareholder-defendants in this case, the loan also served the investment and business purpose of the individual defendants in their joint venture in developing the land and in protecting the value of shares of the Sterling Motel owned by the individual defendants.

In view of our disposition of this cause, we find it unnecessary to discuss any of the additional issues argued by the parties, including the issue of the constitutionality of the provisions of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 800).

For the reasons stated, therefore, the judgment of the Circuit Court of Whiteside County is affirmed.

Affirmed.

STENGEL and STOUDER, JJ., concur.